FILED

09/12/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0741

DA 22-0741

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 171N

THOMAS F. MIETZEL, LLC, a/k/a THOMAS
F. MEITZEL, LLC and THOMAS F. MIETZEL,

      Plaintiffs and Appellees,

   v.

CREATIVE WEALTH ACQUISITIONS & HOLDINGS,
LLC, BRAD QUINTANA, and CHAD McCALL,

      Defendants and Appellants.

APPEAL FROM:   District Court of the Eighth Judicial District,
                 In and For the County of Cascade, Cause No. CDV-21-0413
                 Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           Steven J. Fitzpatrick, Michael L. Rausch, Megan E. Wampler,
           Browning, Kaleczyc, Berry & Hoven, P. C., Great Falls, Montana

      For Appellees:

           Joshua I. Campbell, Patrick R. Watt, Heather M. Starnes, Jardine,
           Stephenson, Blewett & Weaver, P.C., Great Falls, Montana

                         Submitted on Briefs:  July 19, 2023

                                 Decided:  September 12, 2023

Filed:

                          _____
                                     Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellants Creative Wealth Acquisitions & Holdings, LLC (Creative Wealth), Brad Quintana, and Chad McCall appeal the deemed denial of their M. R. Civ. P. 60(b) Motion for Relief from Default Judgment. We affirm.

¶3 Creative Wealth, now expired, was a Utah-based limited liability corporation. Through its two members, Quintana and McCall, Creative Wealth renovated and resold residential real estate. On April 2, 2019, Creative Wealth entered a contract with Thomas F. Mietzel, LLC (Mietzel LLC), a Nevada-based limited liability company managed by Thomas Mietzel (Thomas). Under the terms of the contract, Mietzel LLC agreed to lend Creative Wealth $120,000 to purchase property located at 213 7th Street North in Great Falls. In return, Creative Wealth granted Mietzel LLC a promissory note that included the following language:

> FOR VALUE RECEIVED, [Creative Wealth] Promises to pay [Mietzel LLC] the principal amount of $120,000 plus 10% interest in 4 months (or earlier) from property closing date starting on the 8th day of April 2019.
>
> This note repayment will be at the rate of 10% for 4 months from the day the property closes. No early prepayment penalties or discounts if paid prior to scheduled repayment date.

2

¶4      On June 27, 2019, Creative Wealth and Mietzel LLC executed a second contract. Mietzel LLC agreed to lend an additional $125,000 to Creative Wealth to fund the purchase of a second property, located at 1506 16th Street South in Great Falls.  In return, Creative Wealth executed and delivered to Mietzel LLC a promissory note on the loan.  Nearly identical to the April note, the June promissory note included the following language:

> FOR VALUE RECEIVED, [Creative Wealth] Promises to pay [Mietzel LLC] the principal amount of $125,000 plus 9% interest in 3 months (or earlier) from property closing date.

> This note repayment will be at the rate of 9% for 3 months from the day the property closes. No early prepayment penalties or discounts if paid prior to scheduled repayment date.

¶5      Shortly after executing the two notes, Creative Wealth discovered both properties required significantly more renovations than initially anticipated.  The extent of necessary repairs and the work performed by Creative Wealth is not clear from the briefing.  It appears that over the ensuing two years, Creative Wealth made no payments of interest or principal on either the April 2019 or June 2019 loans.[1]  Despite several attempts by Mietzel LLC to collect payment on the loans by August 2021, the principal balance remaining on the combined loans was $245,000.

¶6      On August 2, 2021, Thomas and Mietzel LLC filed a complaint in the Eighth Judicial District Court, Cascade County, naming Creative Wealth, Quintana, and McCall as defendants.  The complaint alleged that Creative Wealth breached its obligation under the contracts to repay the two loans.  Additionally, Plaintiffs alleged claims against

---

[1] The parties dispute whether the terms of the contracts obligated Creative Wealth to make payments on either loan prior to the resale of either property.  Whether the above quoted text of the contracts is ambiguous is irrelevant to the dispositive issues in this appeal.

3

Quintana and McCall for fraud, misrepresentation, breach of the covenant of good faith and fair dealing, deceit, and malice. The complaint sought money damages for the full remaining principal balance of the two loans, accrued and ongoing interest, and an award of costs and fees. Defendants do not dispute that Plaintiffs served them by personal delivery with the complaint and summons. Under M. R. Civ. P. 12(a)(1)(A), Defendants had twenty-one days from the date of service to answer or otherwise respond to the complaint. All three failed to do so.

¶7 On September 15, 2021, with no action taken by the Defendants, Plaintiffs filed for entry of default. On September 27, 2021, the Clerk of the District Court entered default. Three days later, Plaintiffs moved the District Court for entry of default judgment. In response, the District Court scheduled and held a hearing over Zoom. Plaintiffs and their counsel attended the November 10, 2021 hearing. Defendants did not.

¶8 On January 31, 2022, the District Court entered default judgment against all Defendants. The judgment awarded the following monetary damages to Plaintiffs:

a. $120,000 for the unpaid principal balance on the April 2019 promissory note;

b. Together with accrued interest on the April 2019 promissory note in the amount of 18% per annum from April 3, 2019, to the date of this judgment;

c. $125,000 for the unpaid principal balance on the June 2019 promissory note;

d. Together with accrued interest on the June 2019 promissory notes [sic] in the amount of 18% per annum from June 28, 2019, to the date of this judgment;

e. Costs and attorney's fees incurred by Plaintiffs in pursuing this matter; and

4

f. Post-judgment interest on the foregoing amounts accruing at the rate of 6.25% per annum.

The judgment also imposed liability on Defendants for any deficiency remaining upon the sale of the two Great Falls properties.

¶9 Following the District Court's entry of default judgment, and for the first time in the case, Defendants responded. On April 21, 2022, Quintana, purportedly acting on behalf of Creative Wealth, filed a motion to set aside default judgment under M. R. Civ. P. 60(b). At the time of filing, Quintana, McCall, and Creative Wealth all were unrepresented, and it is unclear from the record if the motion was served on Thomas or Mietzel LLC.

¶10 That same day both properties were sold at a sheriff's sale. At auction, the 16th Street property sold for $196,000; the 7th Street property sold for $40,001. On May 19, 2022, following the sale, Plaintiffs moved the District Court to calculate and enter a deficiency judgment against Defendants.

¶11 At some point during this period, Quintana, McCall, and Creative Wealth secured legal representation. On September 15, 2022, counsel for Defendants filed a notice of appearance and a brief in opposition to Plaintiffs' motion to set a deficiency amount. Defendants challenged only Plaintiffs' proposed calculation of interest under the promissory notes. In response, Plaintiffs filed an unopposed motion to amend the adjudged interest rate of 18% per annum to 15% per annum, to comply with § 31-1-107, MCA.

¶12 With Plaintiffs' motions to set deficiency amount and to amend the judgment still pending, counsel for Defendants filed a second Rule 60(b) motion for relief from judgment. The District Court took no record action on the second Rule 60(b) motion, and on

5

December 5, 2022, the motion was deemed denied pursuant to M. R. Civ. P. 59(f) and 60(c). Creative Wealth, Quintana, and McCall appeal, arguing the District Court committed reversible error by failing to set aside default judgment under M. R. Civ. P. 60(b)(1), (4), (5), and (6).

¶13 As a general matter, we review a district court's denial to set aside default judgment under M. R. Civ. P. 60(b) for abuse of discretion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 388 Mont. 423, 166 P.3d 451. In furtherance of this Court's policy favoring trial on the merits and disfavoring decision by default judgment, even a slight abuse of discretion is sufficient to reverse a district court's refusal to set aside a default judgment. *DeTienne v. Sandrock*, 2017 MT 181, ¶ 22, 388 Mont. 179, 400 P.3d 682 (citing *Lords v. Newman*, 212 Mont. 359, 364, 688 P.2d 290, 293 (1984)). The general rule notwithstanding, where a movant seeks relief under M. R. Civ. P. 60(b)(4) based on a claim that the judgment is void, we review the district court's ruling de novo, as "the determination that a judgment is or is not void is a conclusion of law." *Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 18, 353 Mont. 201, 219 P.3d 881 (citing *Essex*, ¶ 16).

¶14 Defendants assert that the District Court was required to set aside the default judgment under M. R. Civ. P. 60(b)(4) because the default judgment was invalid for several reasons. First, Defendants claim that the plain language of the promissory notes did not require repayment of any kind until the properties were renovated and resold, and the complaint therefore failed to state a claim upon which relief could be granted. Next, Defendants argue the judgment is void because Thomas, as a member of Mietzel LLC, did

6

not have standing to bring claims in his individual capacity. Finally, Quintana and McCall argue that they are protected under the corporate shield doctrine and cannot be held individually liable under the contracts.

¶15 Plaintiffs respond that the dealings of the parties and the language of the notes evince a clear intent for the loans to be short-term. Creative Wealth defaulted on the loans when it failed to repay them in the months following the execution of the notes. Plaintiffs add that even if the language of the promissory notes is ambiguous, ambiguity alone is not enough to set aside default judgment. In response to arguments regarding the corporate shield doctrine and Thomas's individual standing, Plaintiffs argue that the complaint's allegations of fraud, misrepresentation, deceit, and malice were sufficiently pleaded to show that Thomas was individually harmed by the tortious conduct of Quintana and McCall.

¶16 Under M. R. Civ. P. 60(b)(4), a party is entitled to relief from final judgment if that judgment is void. *Child Start*, ¶ 19. "A judgment is void only if the court which rendered it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process of law." *Child Start*, ¶ 21 (quoting *O'Rourke Bros., Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 951 (7th Cir. 2000)). Defendants do not argue that the District Court violated due process. Their Rule 60(b)(4) claim thus turns solely on whether the District Court had jurisdiction to enter its judgment.

¶17 To render a valid judgment, a Montana court must have both subject matter jurisdiction over the claims and personal jurisdiction over the parties involved. *Lee v. Lee*, 2000 MT 67, ¶ 20, 299 Mont. 78, 996 P.2d 389. The district courts of Montana are courts

of general jurisdiction, having original subject matter jurisdiction over "all civil matters and cases at law and in equity."  Mont. Const. art. VII, § 4; *see also* § 3-5-302(b), (c), MCA.  Montana district courts acquire personal jurisdiction over parties either by valid service of process or by the voluntary appearance of the party personally or the party's attorney, agent, officer, or employee.  M. R. Civ. P 4(b)(2).  Defendants do not challenge the court's personal jurisdiction in this case.

¶18     Defendants first claim that the complaint failed to state any claim upon which relief could be granted.  In support of their argument, Defendants draw the Court's attention to *Crawford v. Pierse*, in which we stated, "[i]f a pleading is not sufficient to put the defendant in the wrong, the court cannot grant redress."  56 Mont. 371, 377, 185 P. 315, 318 (1919).  *Crawford* held that a judgment predicated on an insufficient pleading is invalid and subject to collateral attack.  56 Mont. at 377, 158 P. at 318.  Defendants' reliance on *Crawford*, however, is misguided.  As noted in that case, the time and place to challenge the validity of a complaint is before the district court:

> When the sufficiency of a complaint is challenged for the first time on appeal, the objection that it does not state a cause of action is regarded with disfavor, and every reasonable inference will be drawn from the facts stated necessary to uphold it . . . If upon any view the plaintiff is entitled to relief the pleading will be held sufficient . . . [A] judgment rendered upon default will not be held void even though the statement of the cause of action may be so defectively made that it would have been open to general demurrer . . . .

*Crawford*, 56 Mont. at 376, 156 P. at 318 (internal citations omitted).  Resolving "all reasonable inferences" in favor of Plaintiffs, the complaint clearly sets forth a straightforward claim for breach of contract. Defendants' claim that they did not breach the terms of the contract is insufficient to show that the complaint is so defective as to be

8

"no more than a piece of blank paper" or to strip the District Court of jurisdiction to hear the issues. *Crawford*, 56 Mont. at 377, 156 P. at 318. The issues presented in the complaint demonstrate a dispute over contract interpretation. The parties do not dispute that resolution of contract ambiguities and an alleged breach falls squarely within the District Court's jurisdiction over "all civil matters and cases at law and in equity." Mont. Const. art. VII, § 4.

¶19 Defendants' argument that the judgment is void as a result of Thomas's lack of standing also fails to call into question the District Court's exercise of subject matter jurisdiction in this case. Standing refers to the constitutional and prudential requirement that a case or controversy exists for a court to adjudicate. *Mitchell v. Glacier Cty.*, 2017 MT 258, ¶¶ 9-10, 389 Mont. 122, 406 P.3d 427. Subject matter jurisdiction, on the other hand, defines a court's power to decide a certain type of case. *Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶ 14, 340 Mont. 56, 172 P.3d 1232. While "[s]tanding is a threshold jurisdictional requirement," a lack of standing "does not deprive a district court of its subject matter jurisdiction." *Sagorin v. Sunrise Heating and Cooling, LLC*, 2022 MT 58, ¶ 8, 408 Mont. 119, 506 P.3d 1028; *Ballas*, ¶ 14. "[A] court lacks the power to resolve a case brought by a party without standing because such a party can present no actual case or controversy, not because the court has been stripped of its subject matter jurisdiction." *Ballas*, ¶ 16. Because Defendants' standing argument fails to challenge the District Court's jurisdiction, denial of their Rule 60(b)(4) motion on those grounds is correct as a matter of law.

¶20 Though it is not a jurisdictional defect, we consider briefly Thomas's individual standing. Standing analysis focuses narrowly on whether, regardless of the justiciability of a claim, the proper claimant asserts it. *Larson v. State*, 2019 MT 28, ¶ 45, 394 Mont. 167, 434 P.3d 241 (internal citations omitted). Constitutional and prudential considerations require a plaintiff show "at an irreducible minimum, that he or she has suffered a past, present, or threatened injury to a property or civil right" and that the injury is redressable through court action. *Sagorin*, ¶ 9 (internal quotations omitted; internal citations omitted). If a party cannot show that it has standing to bring a claim, "[a] court lacks [the] power to resolve [the] case . . . because [the] party presents no actual case or controversy." *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 29, 360 Mont. 207, 255 P.3d 80 (citing *Ballas*, ¶¶ 14-16). When a non-party to a contract asserts harms based on a breach of the contract, standing requires the non-party to "show from the face of the contract that it was intended to benefit him." *Deschamps v. Farwest Rock, Ltd.*, 2020 MT 270, ¶ 18, 402 Mont. 15, 474 P.3d 1282 (internal quotations omitted; internal citations omitted).

¶21 Defendants point out that only Mietzel LLC and Creative Wealth were parties to the contracts. Accordingly, they assert, the only parties with property interests in the contracts, and thus a redressable harm due to an alleged breach, were Mietzel LLC and Creative Wealth. *See Sagorin*, ¶ 9. Plaintiffs respond that Thomas, in his individual capacity, made claims of and sought relief for fraud, misrepresentation, breach of the covenant of good faith and fair dealing, deceit, and malice. The District Court, however, awarded only contract damages in its default judgment. Because Thomas was not awarded any damages

10

for his individual claims, Thomas's alleged lack of standing does not demonstrate abuse of discretion in the District Court's refusal to set aside its default judgment.

¶22 Quintana and McCall's assertions of immunity under the corporate shield doctrine likewise do not show a jurisdictional defect. Montana's corporate shield doctrine is codified under § 35-8-304, MCA. The statute prevents a member or manager of an LLC from being held liable for the obligations of the corporation "solely by reason of being a member or manager." Although Quintana and McCall may have, at some point prior, availed themselves of the protections of § 35-8-304, MCA, the applicability of that statute is immaterial to the District Court's jurisdiction. A possible defense under the corporate shield doctrine does not affect a district court's jurisdiction over the subject matter or parties. As with their contract claims, Quintana and McCall's assertions of immunity should have been raised in response to the complaint and are immaterial to a motion under Rule 60(b)(4).

¶23 In sum, the issues Defendants raise all amount to defenses against the complaint. The merits of Defendants' arguments notwithstanding, none of them call into question the District Court's jurisdiction to hear the case. Because Defendants have failed to show the District Court lacked jurisdiction over the claims or the parties, the denial of their motion under M. R. Civ. P 60(b)(4) was correct as a matter of law.

¶24 Defendants next argue that the default judgment should have been set aside under Rule 60(b)(1) because their failure to engage in litigation was a result of mistake or excusable neglect. Defendants contend that they did not understand the consequences of not responding to the legal proceedings against them. They maintain that, as *pro se*

11

litigants, their failure to engage in the legal process is excusable. Defendants point to their good-faith belief that if they were able to finish and sell the properties "there would not be any problems." Defendants apparently believed that if they were able to put the homes on the market, Plaintiffs would not act on the legal proceedings they had initiated. Plaintiffs argue in response that *pro se* status and ignorance of the legal system are insufficient to establish mistake or excusable neglect under the law.

¶25 M. R. Civ. P. 60(b)(1) allows a party to seek relief from default judgment where the default was caused by mistake, inadvertence, surprise, or excusable neglect. *See also* M. R. Civ. P. 55(c). To determine whether relief from a default judgment is appropriate under Rule 60(b)(1), we consider whether: (1) the defaulting party proceeded with diligence; (2) the defaulting party's neglect was excusable; (3) the defaulting party has a meritorious defense to the claim; and (4) the judgment would injuriously affect the defaulting party. *DeTienne*, ¶ 29 (citing *Mont. Prof'l Sports, LLC v. Nat'l Indoor Football League, LLC*, 2008 MT 98, ¶ 35, 342 Mont. 292, 180 P.3d 1142 [hereinafter *NIFL*]). Defendants have raised several defenses in this matter that have potential merit. And we are not unsympathetic to the injurious effect all three defendants will incur by the judgment. Importantly though, because the record substantiates a determination that they did not act diligently in response to the proceeding against them, Defendants' claims fail.

¶26 A court has "discretion to determine that the defendant has not proceeded with due diligence." *NIFL*, ¶ 41. In *NIFL*, we concluded that a defendant had not acted with diligence when it waited twenty-three days after receiving notice of default judgment to retain counsel and another five days before filing a responsive motion. *NIFL*, ¶ 42.

12

Conversely, in *In re Marriage of Winckler*, we held that a district court had abused its discretion in failing to set aside a default judgment where the movant "immediately retained Montana counsel" and "filed his posttrial motions for relief from judgment . . . within one week" of receiving notice of default judgment. 2000 MT 116, ¶ 18, 299 Mont. 428, 2 P.3d 229. Similarly, in *Blume v. Metropolitan Life Insurance Co.*, we found the diligence prong satisfied where the party acted "within days of discovering default judgment." 242 Mont. 465, 469, 791 P.2d 784, 786-87 (1990) (overturned on unrelated grounds).

¶27 Defendants' actions stand in stark contrast to the parties in *Winckler* and *Blume*. Setting aside their intentional decision to not respond to the complaint—even if based on Quintana and McCall's good-faith belief that they could resolve the dispute—Defendants did not respond to default judgment until April 21, 2022, seventy-six days after the notice of entry of judgment. Defendants did not retain assistance of counsel until months later. Defendants claim to have been attempting diligently to secure legal representation as early as the spring of 2022. At no point, however, did they seek to postpone the proceedings against them or make the District Court aware of their difficulty obtaining counsel. We are sympathetic to *pro se* litigants' ignorance of the complex legal issues involved in the defense of a case. But ignorance of the legal system does not allow a party to disregard the rules of procedure, and "it is reasonable to expect all litigants, including those acting *pro se*, to adhere to the procedural rules." *First Bank (N.A.) – Billings v. Heidema*, 219 Mont. 373, 376, 711 P.2d 1384, 1386 (1986). Because there is substantial evidence in the record that Defendants did not act with diligence, they do not satisfy the *NIFL* test.

13

Therefore, the deemed denial of their claims under Rule 60(b)(1) was not a slight abuse of discretion.

¶28 Next, Defendants argue that the District Court should have granted relief under the catchall provision of M. R. Civ. P 60(b)(6). Subsection 6 of Rule 60(b) allows a district court to grant relief from judgment for "any other reason that justifies relief." Relief under Rule 60(b)(6) applies only "in extraordinary circumstances which go beyond those covered by the first five subsections of the rule." *Essex*, ¶ 21. Consequently, prior to seeking relief under 60(b)(6), a party must show that none of the first five subsections of Rule 60(b) apply. *Whitefish Credit Union v. Sherman*, 2012 MT 267, ¶ 24, 367 Mont. 103, 289 P.3d 174 (quoting *In re Marriage of Waters*, 223 Mont. 183, 187, 724 P.2d 726, 729 (1986)). Where, as here, a party claims it is entitled to relief under the other provisions of 60(b), "it cannot also claim relief under 60(b)(6)." *DeTienne*, ¶ 41 (quoting *Koch v. Billings Sch. Dist. No. 2*, 253 Mont. 261, 265, 833 P.2d 181, 183 (1992)). For these reasons, Defendants' Rule 60(b)(6) argument fails.

¶29 Finally, Defendants argue that the District Court abused its discretion by awarding Plaintiffs an interest rate higher than that agreed upon by the parties in the promissory notes. As noted above, Plaintiffs' unopposed motion to amend the judgment to reflect the lawful interest rate remains pending in the District Court. We need not address the issue here.

¶30 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This case presents a question controlled by settled law or by the clear application of applicable standards of

14

review. Finding no abuse of discretion, we affirm the District Court's deemed denial of the Defendants' motion to set aside default judgment. The case is remanded for further proceedings.

/S/ BETH BAKER

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

Chief Justice Mike McGrath recused himself and did not participate in the decision of this case.